IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NOS. 3:04CR58-Cacheris
3:04CR59-Cacheris

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>SAMUEL PAUL CROOK, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court, following the Defendant being found "NOT GUILTY by reason of insanity" on or about April 12, 2005, on defense counsel's "Motion For Hearing Pursuant to 18 U.S.C. § 4243" filed July 10, 2006. The Honorable James C. Cacheris, who conducted the bench trial (as a visiting Judge) resulting in the above noted verdict, has referred this motion to the undersigned (without objection from counsel).

A hearing was conducted by the undersigned on the subject motion on July 20, 2006. Present at the hearing were defense counsel Scott H. Gsell, Assistant U.S. Attorney Joshua Howard, and the Defendant. Because counsel for the parties agreed that all the relevant information was in the record through documents already in the Court's possession, no witnesses were called by either side. Nor was there any substantive difference of opinion between counsel as to the proper disposition at this stage of the proceedings, which is to remand the Defendant to the Attorney General pursuant to 18 U.S.C. § 4243(e).

In reaching this conclusion, the Court considered the following documentary evidence: (1) the Affidavit of FBI Special Agent John C. Mayer in support of Criminal Complaint # 3:04M36, both dated March 10, 2004; (2) Bills of Indictment in both of the above captioned cases; (3) the

report dated September 3, 2004 following the Defendant's in-custody forensic evaluation at the Federal Bureau of Prisons' Metropolitan Detention Center in Los Angeles, California; (4) the Defendant's criminal history, to which defense counsel stipulated prior to the Defendant's bench trial; and (5) the Risk Assessment Review Report dated February 7, 2006 based on further in-custody evaluation following the bench trial and verdict.

## I. FACTUAL FINDINGS

These documents support the following factual findings:

A. The Defendant entered Charlotte-Douglas International Airport on Sunday, March 7, 2004, carrying a bottle of his own urine. He also had a mouthful of urine, which he spit on a U.S. Transportation Safety Administration (TSA) "Screener" when she asked if he had a boarding pass.

B. After spitting urine on the Screener the Defendant ran into the "sterile area" of the airport and threw the bottle of urine at another TSA Screener. Although there is no indication elsewhere that the Defendant is Jewish, as he was being restrained by airport security personnel he shouted, "I am a Jew. I'm going to Israel one way or another!" One witness described the Defendant as having dirt and feces smeared on his face when he attempted to breach airport security.

C. The Defendant was taken, in custody, to Broughton Hospital (a state mental institution), where he had previously been institutionalized on more than one occasion. While there, on March 12, 2004, he stated that if he was forcibly medicated, he would "kill [President] Bush, rip his heart out and gouge out his eyes . . . ." See Bill of Indictment returned March 22, 2004 in case number 3:04CR59. These statements constitute the basis for the second felony charge on which the Defendant has since been found "NOT GUILTY by reason of insanity."

D. On defense counsel's Motion, and by Order of the undersigned dated April 19, 2004, the Defendant was transferred to the Federal Bureau of Prisons' Metropolitan Detention Center in Los Angeles, California. By report dated September 3, 2004, the evaluators (Ralph Ihle, Ph. D., Chief Forensic Psychologist; and Lynette Small, MC, Forensic Psychology Intern) advised the Court of their expert conclusions: namely, that the Defendant <u>was</u> competent to assist in his defense, but that he had <u>not</u> been competent at the time of the alleged offenses.

E. A copy of this September 3, 2004 report is attached as Exhibit A, and is incorporated by reference. Certain facts contained in the report nevertheless bear repeating here, namely: (1) that the Defendant, who was only 31-years-old at the time of these offenses, had already been on Social Security Disability (based on a mental disability) for a number of years; (2) that the Defendant has been institutionalized numerous times at multiple institutions due to psychotic incidents or symptoms, and has been repeatedly diagnosed as schizophrenic, paranoid, antisocial, and/or as having a variety of related emotional and psychological disorders; (3) that the Defendant has been prescribed numerous anti-psychotic and other medications for these various conditions through the years, although his record of taking prescribed medication has been sporadic and generally poor; (4) that one of the Defendant's sisters, Dawn Gilmer, informed the evaluators that the Defendant "has never acted normal," and that "[h]is problems worsened over the last eight or nine years with his anti-government thoughts and discussion of war and politics in a disorganized and bizarre manner"; (5) that Ms. Gilmer "reported . . . the family is afraid that Mr. Crook will physically attack them if they disagree with his viewpoints and believes he needs to be confined to a facility where he cannot escape and can be monitored on a daily basis," that "some family members have even installed extra security measures in their homes in order to protect themselves from Mr. Crook," and "that Mr.

3

Crook has been hospitalized numerous times and ceases taking his medication the day he is released"; and (6) that the Defendant has attempted suicide on at least two occasions (in November 2000 and February 2003).

F. The Defendant has an extensive criminal record which extends back to 1991, when he was a teenager. The copy of the Defendant's criminal record, to which defense counsel previously stipulated, is attached as Exhibit B and incorporated by reference.

G. A copy of the "Risk Assessment Review Report" dated February 7, 2006 is attached as Exhibit C, and is also incorporated by reference. Of particular note in this Report were reports of the Defendant's generally uncooperative manner, his bizarre statements (for example, that he is "a Marshal" and/or "a secret agent"), his refusal of medication, and, perhaps most disturbing, the observation of the Defendant eating his own feces.

H. Finally, the undersigned concurs with – and adopts – the factual and clinical conclusions reached by the four member panel which conducted the Risk Assessment Review, to wit: (1) the Defendant's family has a limited ability to supervise or otherwise care for the Defendant, particularly in light of their expressed fear of him; (2) that the Defendant's past history of noncompliance with prescribed medical treatment makes future compliance unlikely; (3) that the Defendant should be remanded to custody until medical and psychological experts are able to predict with reasonable certainty that he <u>will</u> comply with his prescribed medical treatment; and (4) that until such compliance is likely, the Defendant will remain a danger to himself and others if released.

## II. CONCLUSIONS OF LAW

Based on the above findings of fact, the Court reaches the following conclusions of law:

A. Title 18, United States Code, Section 4243(d) places the burden on "a person found not guilty only by reason of insanity of [certain offenses] . . . [to] prov[e] by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect." The statute reduces the burden of proof to "a preponderance of the evidence" for "any other offense."

B. The Defendant in this case has not met his burden of proof, whether a "clear and convincing evidence" standard applies (if the subject offenses are deemed to "involv[e] a substantial risk of [bodily injury to, or serious property damage to the property of, another person]") or "a preponderance of the evidence" standard applies (for "any other offense").

C. The statute requires, in 18 U.S.C. § 4243(e), that the Defendant in such a case be committed to the custody of the Attorney General, as set forth with greater particularity in the following Order; and in § 4243(f) that certain steps be taken if the Defendant is deemed thereafter by the director of the institution to which he is sent to be suitable for release.

### III. ORDER

Based on the foregoing findings of fact and conclusions of law, **IT IS HEREBY ORDERED**:

A. The Defendant is committed to the custody of the Attorney General, who "shall make all reasonable efforts to cause [the State of North Carolina] to assume . . . responsibility [for the Defendant's custody, care, and treatment]," as required by 18 U.S.C. § 4243(e);

B. If the State of North Carolina will not assume such responsibility, the Attorney General shall transport the Defendant forthwith to a suitable federal facility;

C. Should it be necessary to select a federal facility, due consideration shall be given to the suggestion of the Risk Assessment Review Panel "that the defendant be committed pursuant to 18 U.S.C. § 4243(e) to the Federal Medical Center in Butner, North Carolina";

D. If and when the director of whatever facility is selected for the Defendant's continuing custody, care and treatment determines that the Defendant "has recovered from his mental disease or defect to such an extent that his release, or his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment, would no longer create a substantial risk of bodily injury to another, [the director] shall promptly file a certificate to that effect with [the Clerk of Court for the Western District of North Carolina]," as required by 18 U.S.C. § 4243(f);

E. Upon receipt of any such certification, the Clerk is directed to transmit copies and insure further proceedings are conducted in this Court in accordance with § 4243(f); and

F. The Clerk is directed to send copies of this Memorandum and Order, with all three exhibits, to defense counsel Scott Gsell; the United States Attorney; the United States Marshal; and to the Honorable James C. Cacheris, United States Courthouse, 401 Courthouse Square, Alexandria, Virginia 22314.

**SO ORDERED**, this 20th day of July, 2006.

*Carl Horn, III*
Carl Horn, III
United States Magistrate Judge