UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:04-cr-00058-MOC-DSC
[Consolidated with 3:04cr59]

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **SAMUEL PAUL CROOK,** | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on the Petition to Revoke Conditional Release and to Recommit Defendant to the Care and Custody of the Attorney General for purposes of hospitalization. See Docket Entry (#74) (sealed).

In 2004, defendant was indicted for assaulting, resisting, and impeding TSA officers at the Charlotte-Douglas Airport. Defendant entered a plea of not guilty by reason of insanity and a bench trial was held by Honorable James C. Cacheris, United States District Judge, on April 12, 2005. At the conclusion of trial, Judge Cacheris found defendant not guilty by reason of insanity, ordered defendant committed to a suitable facility in the interim, and calendared a commitment hearing in accordance with 18 U.S.C. § 4243(d).

After a psychological examination was completed, a commitment hearing was conducted on July 20, 2006, by Honorable Carl Horn, United States Magistrate Judge, and defendant was committed to the care of the Attorney General for hospitalization pursuant to § 4243(e). On March 21, 2007, the Bureau of Prisons filed a petition with this court seeking the conditional release of defendant from such hospitalization. On April 20, 2007, Judge Horn approved defendant's transfer

1

to a less restrictive inpatient facility in South Carolina. Based on information that defendant had further progressed at that facility, Judge Horn granted defendant conditional release to a residential care facility on April 16, 2008. Such release was shot-lives as Judge Horn entered an Order directing defendant's return to an inpatient facility on June 11, 2008, due to defendant absconding from such community placement.

After return to an inpatient facility and marked improvement, an Amended Conditional Release Order was entered by Honorable Martin Reidinger, United States District Judge, on April 29, 2009. That Order allowed defendant to return to a less restrictive placement. Within a year of being released, however, defendant was again in violation of the terms of his release. After determining that defendant could not then cope with release in a community placement that was not a lock-down facility, Honorable David C. Cayer, United States Magistrate Judge, ordered defendant's return to an inpatient placement on July 10, 2009.

After an unsuccessful appeal of that Order, defendant petitioned the court for placement in a private home. On October 29, 2012, Judge Cayer granted defendant's motion and allowed his release from inpatient care and placement at a private home. On August 29, 2013, a petition was filed with the undersigned by the United States Probation Office for the District of South Carolina. After an initial period of successful adjustment in a home setting, probation reported that by June 16, 2013, defendant was again decompensating and was found by officers of the Monroe, North Carolina, Police Department wandering in a park at night, barefoot and without a shirt. His answers to their questions lead them to believe that defendant was unstable. While attempting to transport defendant to a medical facility for an emergency commitment, defendant reacted violently, damaging the patrol car. After a determination was made by mental health providers that defendant was not homicidal or suicidal, he was released to the police, who charged him with

property crimes. Probation further reported that defendant's local mental health provider, who administered Haldol to defendant as prescribed, also reported decompensation. Such provider reported that defendant had poured out another prescribed and self-administered medication, Zyprexa. Probation further detailed other troubling events that occurred throughout the summer of 2013, which are incorporated by reference. Petition (#74).

Based on such report, the court concluded that there was probable cause to believe that defendant was in violation of the terms of his conditional release and issued a warrant for his arrest and revoked his conditional release. After his arrest, defendant was appointed counsel and a hearing was noticed on the revocation of such conditional release. On September 3, 2014, Judge Cayer granted the government's Motion for a Psychiatric Evaluation, which was extended on March 16, 2015. The Forensic Evaluation was filed with this court on June 2, 2015.

After such evaluation was complete, the Bureau of Prisons contacted the court seeking an emergency hearing. The court was informed that defendant was engaged in self destructive and life threatening conduct, including placing a noose around his neck and reinserting feces into his rectum. The court was advised that while the medical facility was in need of assistance from the court, defendant was in no condition to travel to a hearing. After contacting counsel for the government and defendant, the court scheduled a video hearing, which was conducted on June 3, 2015. Defendant appeared at such hearing through a video link at the medical center.

At that hearing, it was readily apparent to the court that defendant was completely incoherent: he was strapped to a transport chair; he was wearing a padded coverall; he was handcuffed; and he was wearing a mouth guard which was intended to protect the guards from being bitten. Despite attempts by the court to communicate with defendant, he responded only

with moans, grunts, and flailing. Based on the court's observations, it appeared that defendant was suffering from severe mental illness, as outlined in the Forensic Evaluation.

During the hearing, the government argued that the court should move forward and determine the issue of revocation under § 4243(g) despite defendant's obvious incompetency. In support of such argument, the government cited persuasive out-of-circuit authority (which will be discussed at length, *infra*) as well as reports from the Eastern District of North Carolina (which handles such hearings on a more frequent basis due to its proximity to Butner) that such court did not consider competency to be a prerequisite to moving forward on a § 4243(g) recommitment hearing.

This court fundamentally agrees with the government's argument and concurs with the reported philosophy of its learned colleagues that a requirement of competency for recommitment under § 4243(g) could create an absurd result and defeat the intent of Congress. In another case, this court may well follow such recommendation; however, the history of this case reveals that a number of judges in this district have afforded defendant opportunities to return to the community when his mental health issues are adequately controlled. Thus, the court has some reason to believe that if defendant were restored to competency there is a possibility, however remote, that his participation in a revocation hearing could be meaningful. Rather than foreclose that opportunity, the court has decided in an abundance of caution to first consider whether defendant is competent to proceed with a revocation hearing.

There is no specific threshold or "quantum of evidence" that requires a district court to order a competency hearing. Davis v. Alabama, 545 F.2d 460, 464 (5th Cir. 1977). Instead, courts consider three factors: "(1) the existence of a history of irrational behavior, (2) the defendant's demeanor [during the hearing], and (3) prior medical opinion on competency." United States v.

4

Ruston, 565 F.3d 892, 902 (5th Cir.2009). Significantly, "the presence or absence of mental illness or brain disorder is not dispositive" as to competency. Mata v. Johnson, 210 F.3d 324, 329 n. 2 (5th Cir. 2000). Put another way, mental illness should not be confused with competency, as those suffering from mental illness may nonetheless be competent.

Here, the court has carefully considered the Forensic Evaluation, observed the demeanor of the defendant during the hearing, and attempted to communicate with the defendant. Based on a totality of the evidence, the court finds reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect and/or a combinations of mental diseases and defects that render him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. For example, at page 1 of the Forensic Report, the forensic psychologist states that while defendant initially understood instructions concerning the nature of the evaluation at the time of his admission, his mental health has deteriorated during the evaluation process "to the point his comprehension of his current circumstances was severely impaired." Forensic Report at 1. Further, during his evaluation period, defendant committed a number of serious infractions, but the facility concluded that he was "not responsible for his conduct as these infractions occurred during acute psychosis." Id. at 12. The court has also considered defendant's demeanor and the answers to questions posed to him at the hearing, all of which are indicative of a defendant who is both unaware of the nature of the proceedings and unable to assist in his own defense. Thus, by a preponderance of the evidence now before the court, the court determines that defendant is unable to proceed or to provide his counsel with meaningful assistance in defending against the petition for revocation of release.

Having made a competency determination, the issue becomes whether competency is required for recommitment under § 4243(g). In United States v. Mitchell, 709 F.3d 436 (5th Cir. 2013), the Fifth Circuit held that "we have never imposed a competency requirement on a §4243(g) hearing…." In conducting a plain error review, however, the appellate court went on to suggest that competency is required in all § 4243 proceedings, citing the requirement of competency for the initial commitment hearing under § 4243(c) after an acquittal based on temporary insanity. Id. While the government argues that Mitchell stands for the proposition that competency is not an element of § 4243(g) and that the court's colleagues in the Eastern District routinely dispense with the competency issue in similar hearings, this court cannot draw such a bright line and finds it better to err in favor of a defendant's Sixth Amendment right to assist in his own defense. This is especially important where, as here, defendant has a track record of being able to gain re-admittance to a community setting when he is properly medicated.

Finally, the government has informed the court that based on such § 4241(d) commitment, the BOP has in place procedures which will provide defendant with needed medications and that no further action is necessary at this time by this court under Sell v. United States, 539 U.S. 166 (2003).

**ORDER**

Having determined that defendant is not competent to proceed and that competence is required under 18 U.S.C. § 4243(g), the court hereby commits defendant to the care and custody of the Attorney General and he shall be held until his capacity to proceed on the petition seeking revocation of conditional release is restored, all in accordance with 18 U.S.C. § 4241(d). At the

request of defendant's counsel, the Bureau of Prisons shall make periodic reports to the court and to counsel of record as required under 18 U.S.C. § 4241(d).

To further protect defendant's interests, counsel for defendant's appointment is hereby extended and is made one of indefinite duration. Counsel is granted leave to submit interim vouchers for periodic payments of his fees and costs.

Signed: June 3, 2015

Max O. Cogburn Jr
United States District Judge